The judgment in this case reverses the order of the Public Utilities Commission and causes an ordinance of the city of Lorain, which is in conflict with the order of the Commission, to prevail over the Commission's order, and the minority of this court fully concur in that judgment, but wholly disagree with the majority upon the reasons by which it is adjudged that the ordinance has paramount force and effect. There would be no disagreement with the per curiam opinion, which is concurred in by four members of the court, if no question were made as to the source of power on the part of the municipality. We are not able to agree with the opinion in its entirety, because of the limitations placed upon the power of the municipality. The effect of the decision is therefore to make every ordinance of a municipality affecting the control and regulation *Page 71 
of traffic upon its streets subject to such limitations as may be sought to be imposed by the Public Utilities Commission, and, in the event of conflict, to submit to the Supreme Court of the state as a justiciable question whether the ordinance is a reasonable police regulation.
While we agree that municipalities have the power to pass ordinances providing reasonable police regulation of traffic upon their streets, we emphatically disagree that any such ordinances, under any circumstances, can be rendered nugatory by any order of the Public Utilities Commission. We are compelled to register an emphatic protest, because in the absence of such a protest every word of the per curiam opinion would become the established law of this state and an authority proper to be cited in other controversies affecting the power of municipalities over regulation of street traffic.
We take issue with the first sentence of the per curiam
opinion, to the effect that this controversy turns upon the construction to be given Section 614-86, General Code. That section is a part of the motor transportation Code recently adopted by the Legislature to regulate motor transportation throughout the state. (110 Ohio Laws, 211.) It is true that that Code confers certain power and authority upon the Commission in the matter of regulating service, fixing rates, and issuing certificates of convenience and necessity, which certificates are equivalent to licenses. It was realized by the General Assembly that by virtue of Section 3, Article XVIII of the Constitution, giving to municipalities all powers of local self-government, *Page 72 
the Legislature had no power to confer authority upon the Public Utilities Commission to license the use of motor vehicles upon the streets of municipalities, contrary to the wish and will of municipal authorities.
The constitutional amendment above-referred to must be conceded to be paramount over any legislative enactment. It is proper to add that the succeeding session of the General Assembly removed all doubt upon this point by expressly taking away from the Commission any power over the regulation of motor traffic within municipal corporations and expressly recognized the unlimited power of such regulation to be in the municipalities.
No reference is made in the majority opinion to the provisions of the ordinance of the city of Lorain, which are the subject-matter of this controversy. The ordinance is one controlling traffic upon some of its most congested streets, and the preamble to the ordinance, as well as the ordinance itself, recites the existence of congestion, and that transportation service being rendered by street car lines on those streets will be impaired and made less efficient to the inhabitants and the public, unless certain restrictions are made with reference to the operation and control of jitney bus service on those streets, and that by reason of the enactment of the ordinance and the enforcement of its provisions the street railroad company will be induced to expend a large amount of money for new construction and extensions of its service within the limits of said city of Lorain. It further clearly recites that the unnecessary congestion of *Page 73 
traffic on those streets and avenues by reason of the public bus service tends to make the same dangerous to the public generally and a menace to the lives of the citizens of the municipality. The effect of the majority pronouncement is to give the Public Utilities Commission a measure of power over municipalities which may not be contravened by municipal legislation, and the only protection a municipality will have under that pronouncement is to prosecute error to this court and obtain the judgment of this court upon the reasonableness and lawfulness of the order of the Commission. The majority pronouncement, therefore, holds in effect that the Public Utilities Commission is better able to judge of the safety of traffic conditions upon congested streets of municipalities than the constituted authorities of the municipalities, respectively. It further holds in effect that this court is better able to judge of the reasonableness of such an order of the Commission than the municipal authorities themselves. The deplorable character of this pronouncement more clearly appears when it is pointed out that this court will not interfere with an order of the Commission in such matters, unless it affirmatively appears that the Commission's order is so manifestly contrary to the evidence adduced as to indicate bias and prejudice. This has been repeatedly held by this court.Village of St. Clairsville v. Public Utilities Commission,102 Ohio St. 574, 132 N.E. 151; Ohio Utilities Co. v. PublicUtilities Commission, 108 Ohio. St., 143, 140 N.E. 497, and again quite recently in Cincinnati Traction Co. *Page 74 
v. Public Utilities Commission, 112 Ohio St. 699,148 N.E. 921, decided May 19, 1925.
It was the opinion of the Constitution framers in 1912 that in matters of local self-government the municipal authorities were better able to judge of local conditions than state authorities, and that was recognized by the Legislature in the enactment of the motor transportation Code, but this has all been reversed by the very brief, even sententious, declaration of this court. It must be clearly kept in mind that this controversy relates to an effort on the part of a city to regulate traffic upon one or more of its principal streets, for the purpose of guarding the lives of its inhabitants from the ever-increasing dangers of motor traffic. It is reported that in 1924 there were 19,000 deaths in the United States due to careless operation of motor vehicles, and that during the same year there were approximately 475,000 persons who received injuries not resulting in death. The comparison with the year 1923 shows that conditions are rapidly growing worse. The number of motor vehicles increases year by year, the seventeen million mark has been passed in the United States. This fact, added to the rapid growth of the cities in population, has caused the congestion of traffic to present an ever-increasing problem. Traffic rules and regulations which would have been safe 20 years ago have to-day become impossible. If full responsibility for the dangers of the increased congestion could be charged against the Public Utilities Commission, and through it against the state of Ohio, there might be some measure of justification for a declaration that the Commission *Page 75 
has power and authority paramount over that of the municipalities. The brief majority opinion evidently loses sight entirely of the fact that Section 3714, General Code, is still in full force and effect, and that, on the one hand, it gives to municipalities special power to regulate the use of streets and confers upon municipal council the care, supervision, and control of all public ways within such corporations, and, on the other hand, requires them to be kept open, in repair, and free from nuisance. A very large part of the volume of litigation in the trial courts of the state relates to the liability of municipalities for neglect of the duties and liabilities imposed by Section 3714. The injustice of charging upon municipalities such duties and liabilities and, at the same time, by judicial pronouncement, rendering them helpless to remedy dangerous conditions, must be apparent to the most casual reader of the majority opinion.
Section 3632, General Code, has apparently been entirely lost sight of; this section conferring upon municipalities the authority to regulate the use of all vehicles, including motor vehicles, upon the streets and avenues of cities. That section was not repealed at the time of the enactment of the motor transportation Code.
Even if we should ignore entirely the provisions of Section 3, Article XVIII of the Constitution, as the majority of this court seem determined to do, and even if local self-government is to be entirely relegated to the scrap heap, it is impossible to understand how the majority of this court are able to explain the utter disregard of Sections 3714 *Page 76 
and 3632, General Code, which must in any event be construedin pari materia with the motor transportation Code. It is quite significant that the majority opinion does not even attempt, to explain. The majority opinion would render entirely nugatory many salutary provisions of municipal ordinances which make provision for "one way traffic" and "no left turn," and many other important regulations which have been found necessary in the larger cities of the state. Municipalities must have a wide latitude, not only in determining the needs of their citizens and the public in the matter of transportation facilities, but also in selecting and controlling the character and quality of the transportation service within their boundaries. This court has frequently declared ordinances of cities to be invalid, but in no case prior to this time has it been declared that the Legislature may give power to the Public Utilities Commission, or any other board created by legislation, with purely administrative duties, to impose regulations upon a municipality contrary to its ordinances. A very clear expression of the paramount power of municipalities is found inAllion v. City of Toledo, 99 Ohio St. 416, 124 N.E. 237, 6 A.L.R., 426. In that case the opinion of Jones, J., quoted with approval language found in the opinion of Schmidinger v. Cityof Chicago, 226 U.S. 578, 33 S.Ct., 182, 57 L.Ed., 364, Ann. Cas., 1914B, 284, as follows:
"Local legislative authorities, and not the courts, are primarily the judges of the necessities of local situations calling for police regulation, and the courts can only interfere when such regulation *Page 77 
arbitrarily exceeds a reasonable exercise of authority."
The syllabus of the Allion case, in which all judges concurred, is equally clear and conclusive:
"Unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion.Local authorities are presumed to be familiar with localconditions and to know the needs of the community."
There has been a tendency on the part of this court for several years to render meaningless that part of Section 3, Article XVIII of the Constitution, which confers upon municipalities all powers of local self-government, and this decision has fully completed the process and has left nothing more to be desired by the opponents of municipal home rule.
This challenge of municipal home rule, as provided in Section 3, Article XVIII of the Constitution, calls for a discussion of the much-debated question as to what is meant by and what is included within the language in the first part of the section, to-wit, "authority to exercise all powers of local self-government," and what is meant by and what is included within the latter part of the section, to wit, "to adopt and enforce within their limits such local police, sanitary, and other similar regulations as are not in conflict with general laws."
Numerous cases have been decided by this court since 1912, involving an interpretation of this section, and, while it is clear that "local police, sanitary and other similar regulations" can only be valid when not in conflict with general laws, there has been a difficulty in determining whether a *Page 78 
given ordinance relates to "powers of local self-government," or to "local police, sanitary, and other similar regulations." A discussion of the distinction is found in a very clear opinion of Donahue, J., in Cleveland Telephone Co. v. City ofCleveland, 98 Ohio St. 358, at page 377, 121 N.E. 701, and in the opinion in Billings v. Cleveland Ry. Co., 92 Ohio St. 478,111 N.E. 155; and also in Froelich v. City of Cleveland,99 Ohio St. 376, 124 N.E. 212. These cases and others which will hereafter be noticed have settled the proposition that there are some powers of local self-government which may be exercised by municipalities, regardless, of conflict with general laws. While this court has never declared in a single case any definite rule for determining which powers and functions of municipalities may be classed as local self-government, a survey of the cases which have been decided by this court does state lines of distinction from which a rule can be evolved.Fitzgerald v. City of Cleveland, 88 Ohio St. 338,103 N.E. 512, Ann. Cas., 1915B, 106; State Board of Health v. City ofGreenville, 86 Ohio St. 1, 98 N.E. 1019, Ann. Cas., 1913D, 52; Williams v. Scudder, 102 Ohio St. 305, 131 N.E. 481;Village of Struthers v. Sokol, 108 Ohio St. 263,140 N.E. 519; State ex rel. Lentz v. Edwards, 90 Ohio St. 305,107 N.E. 768; State ex rel. v. French, 96 Ohio St. 172,117 N.E. 173, Ann. Cas., 1918C, 896; State ex rel. Hile v. Baker,92 Ohio St. 506, 112 N.E. 1086; Hile, Taxpayer, v. City ofCleveland, 107 Ohio St. 144, 141 N.E. 35; State ex rel.Frankenstein v. Hillenbrand, 100 Ohio St. 339, 126 N.E. 309. *Page 79 
The line of distinction running through the foregoing cases is that matters of health and public schools are matters of general governmental cognizance, not to be affected by special local regulations, and, on the other hand, that those matters which relate to the internal government of a municipality, such as local elections of municipal officers and the powers, duties, and functions of such municipal officers, are matters of local self-government, which may not be influenced or controlled by general laws.
In addition to the foregoing cases there are others which should receive more extended discussion. In the case ofBillings v. Cleveland Ry. Co., 92 Ohio St. 478, 111 N.E. 155, the charter provisions of Cleveland were held paramount to Sections 3777 and 9105, General Code, and that it was therefore not necessary to procure consents of abutting property owners in granting street franchises to street railroads. The effect of that decision was to place, the laws and ordinances of the city beyond the control of the laws of the state in the matter of the use and occupancy of streets of a city by a public utility, and in that respect the case involves a parallel principle to that decided in the instant case. The per curiam
of the majority must therefore be held to have overruled theBillings case, without any mention of it.
A more direct decision of the point involved in the instant case is Village of Perrysburg v. Ridgway, 108 Ohio St. 245,140 N.E. 595, in which it was declared, in the second syllabus:
"The power to establish, open, improve, maintain, *Page 80 
and repair public streets within the municipality, andfully control the use of them, is included within the term 'powers of local self-government.' "
This decision was concurred in by Marshall, C.J., Wanamaker, Day and Allen, JJ.
The same proposition was again declared in Murphy v. City ofToledo and Harding v. City of Bowling Green, 108 Ohio St. 342,140 N.E. 626. The syllabus in those cases is as follows:
"1. Municipalities have full power to regulate or control the use of their own streets.
"2. In such control or regulation a municipality may make any reasonable classification of vehicular traffic in the use of its streets.
"3. The judgment of a legislative body as to a reasonable classification cannot be questioned, except when it is in clear conflict with some express provisions of state or federal Constitution."
 In the case of Froelich v. City of Cleveland, 99 Ohio St. 376, 124 N.E. 212, the following syllabus was pronounced:
"1. In the construction of a section of the Constitution the whole section should be construed together, and effect given to every part and sentence. One part must not be allowed to defeat another, if by any reasonable construction the two can be made to stand together.
"2. When a city has adopted a charter, under which it is authorized to exercise 'all powers of local self-government,' pursuant to the provisions of Sections 3 and 7 of Article XVIII of the Constitution, the authority to locate, establish and protect the streets within its limits resides in the municipality, *Page 81 
and it may adopt and enforce such reasonable regulations for their proper and economic use as it deems to be proper. It may regulate the weight of loads and the width of tires of vehicles passing over the streets. It derives this authority not by grant from the Legislature, but under express authority from the people of the state given in the Constitution.
"3. The state and municipalities may make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community. But neither the state nor a municipality may make any regulations which are unreasonable. The means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation."
This was concurred in by Nichols, C.J., Johnson, Matthias, Wanamaker and Robinson, JJ.
All of the foregoing cases last referred to and discussed relate to the use and regulation of vehicular traffic, and more especially motor traffic, upon the streets of municipalities, and clearly hold that municipal regulation and control are not subject to the general laws of the state, and the opinion pronounced by the majority in the instant case must therefore be held to be in clear conflict with each and all of those decisions. It would seem that they should not be overruled by a brief per curiam, which does not attempt to distinguish them or to overrule their pronouncements. The *Page 82 
lengthy, well-reasoned opinions in each and all of those cases should not be thrown into the discard with no effort whatever to counteract their logic. An absence of discussion of those cases in the per curiam in the instant case leaves this question in a chaotic state.
The per curiam opinion enumerates the powers sought to be conferred upon the Public Utilities Commission by Section 614-86, General Code, and we find no fault with that analysis, except in the seventh paragraph thereof, in which it is stated that by virtue of that section the municipality is authorized to make local police regulations, thereby intimating that it is only by virtue of that section that municipalities have the power to exercise control over their streets in the matter of bus transportation. *Page 83